**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

**JOSEPH N. MONTELEONE,**
         **Plaintiff,**

**vs.**                                         **Case No. 5:09cv202/RH/MD**

**JOHN PALMER, et al.,**
         **Defendants.**

_____

## REPORT AND RECOMMENDATION

         This cause is before the court upon plaintiff's amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 8).  Leave to proceed *in forma pauperis* was granted without the assessment of an initial partial filing fee.  (Doc. 7).  Upon review of the amended complaint, the court concludes that plaintiff has not presented an actionable claim, and that dismissal of this case is warranted.


## BACKGROUND AND PROCEDURAL HISTORY

         Plaintiff is an inmate of the Florida penal system currently confined at Apalachee Correctional Institution ("Apalachee CI").  His amended complaint names three defendants, all prison officials at Apalachee CI:  Warden John Palmer, Assistant Warden C. Atkins, and Correctional Officer J. Sims.  In this § 1983 proceeding, plaintiff challenges a prison disciplinary conviction he received at Apalachee CI in April of 2009.  Specifically, plaintiff claims he was denied procedural due process when defendant Sims failed to perform an adequate investigation of an inmate witness, resulting in plaintiff being unable to present that witness' observations of the incident at the disciplinary hearing.  After the hearing, plaintiff

was convicted of the charge and assigned to the disciplinary squad for 30 days. Plaintiff administratively appealed his conviction, and seeks to hold defendants Palmer and Atkins liable for denying those appeals. As relief, plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, expungement of the DR, and any other relief the court deems proper. (Doc. 8).

## DISCUSSION

Because plaintiff is proceeding *in forma pauperis*, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The court must read plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *Id.* at 327, 109 S.Ct. at 1833, or when the claims rely on factual allegations that are "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). In determining whether the complaint states a claim upon which relief may be granted, the court accepts all the factual allegations in the complaint as true and evaluates all inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1968-69, 1974, 167 L.Ed.2d 929 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss

standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim).  A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations--on their face--show that an affirmative defense bars recovery on the claim.  *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001).

Taking the allegations of the amended complaint as true and construing them in the light most favorable to the plaintiff, they fail to state a plausible due process claim.  The Due Process Clause prohibits state action that deprives a United States citizen of life, liberty, or property without due process of law.  U.S. Const. amend. XIV.  A person alleging a violation of his right to due process must establish that he was deprived of an interest cognizable under the Due Process Clause, and that the procedures attendant upon that deprivation were not constitutionally sufficient. *Kentucky v. Dep't of Corrections v. Thompson*, 490 U.S. 454. 459-60, 109 S.Ct. 1904, 104 L.Ed 2d 506 (1989); *Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement," but that "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)." *Wilkinson v. Austin*, 545 U.S. 209, 221-22, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005).  In *Sandin,* the Supreme Court redefined the circumstances in which a liberty interest will arise in the prison context for purposes of the protections of the Due Process Clause. *Id*., 515 U.S. at 484, 115 S.Ct. 2293.  Rejecting the prior manner of searching state statutes and prison regulations for mandatory language, the Supreme Court held that due process liberty interests "will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as

to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*, 515 U.S. at 484, 115 S.Ct. at 2300.  The *Sandin* Court concluded that Conner's disciplinary conviction did not present a case where the State's action was so severe that it essentially exceeded the sentence imposed by the court, thereby triggering the Clause of its own force.  Nor did Conner's discipline (30-day placement in disciplinary segregation) present the type of "atypical, significant deprivation in which a State might conceivably create a liberty interest."  *Sandin*, 515 U.S. at 485-86, 115 S.Ct. at 2301-02.  As a result, the Court held that neither the prison regulation at issue nor the Due Process Clause itself afforded the inmate a constitutionally protected liberty interest.  "After *Sandin*, . . . the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life." *Wilkinson*, at 223, 125 S.Ct. at 2394 (quotations omitted).

Under the guidance of *Sandin*, the Eleventh Circuit has held that a Florida prisoner's confinement in administrative segregation for two months did not impose an atypical and significant hardship on the prisoner. *Rodgers v. Singeltary*, 142 F.3d 1252, 1253 (11th Cir. 1998); *see also Van Taylor v. McSwain*, No. 08-12238, 2009 WL 1636808, at *2 (11th Cir. June 12, 2009) ("Short sentences of disciplinary confinement do not tend to present the kind of "atypical" and "significant deprivation" to implicate the Due Process Clause absent a showing that the prisoner's isolation worked a major disruption in the inmate's environment when compared to his placement in the general population.").  District courts of this circuit have likewise held that a Florida prisoner's placement in disciplinary confinement for 30days does not invoke due process protections. *See, e.g., Hartley v. McNeil*, No. 5:07cv101/RS/EMT, 2008 WL 1844416  (N.D. Fla. Apr. 23, 2008) (rejecting prisoner's

due process challenge to disciplinary conviction that resulted in 30 days disciplinary confinement on the grounds that that penalty was not an "atypical, significant" deprivation invoking constitutional protection under *Sandin*), *mot. for certificate of appealability denied*, No. 08-14493 (11th Cir. Oct. 24, 2008); *Adamson v. McNeil*, No. 3:08cv231/RV/EMT, 2008 WL 5231869 (N.D. Fla. Dec. 12, 2008) (same), *mot. for certificate of appealability denied,* No. 09-10206 (11th Cir. Mar. 25, 2009); *Hartley v. McNeil*, No. 1:07cv22683, 2008 WL 3200213 (S.D. Fla. Aug. 6, 2008) (same), *mot. for certificate of appealability granted on other grounds*, No. 08-15292 (11th Cir. Jan. 20, 2009); *Hollingsworth v. Crosby*, 4:02cv402/RH/WCS (N.D. Fla. Oct. 14, 2003) (same), *mot. for certificate of appealability denied*, No. 04-11328 (11th Cir. June 24, 2004).

Here, plaintiff's assertion that he was assigned to the disciplinary squad for 30 days which is "physically demanding and labor intensive," (doc. 8, p. 11 ¶ 32), fails to suggest that the penalty, although punitive, was in excess of the sentence he was serving or represented a "dramatic departure" from the normal conditions of his confinement. *Sandin*, 515 U.S. at 485-86, 115 S.Ct. at 2301-02. Therefore, his complaint fails to state an actionable claim under the standard set forth in *Sandin*.

Moreover, even if plaintiff established a protected liberty interest in not being assigned to the disciplinary squad, he has not demonstrated that Officer Sims' allegedly inadequate investigation deprived him of his procedural due process rights. In *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974), the Supreme Court held that, in the prison context, due process requirements under the Constitution are satisfied if (1) written notice of the charges is given to the inmate at least twenty-four hours in advance in order to inform him of the charges and to enable him to marshal the facts and prepare a defense, (2) the inmate is given the opportunity to call witnesses and present evidence when doing so would not unduly interfere with institutional safety or correctional goals, and (3) a written statement is drafted by the fact-finders as to the evidence relied on and the reasons for the disciplinary action. *Id*. at 563-67, 94 S.Ct. at 2978-80. In regard to the third

requirement under *Wolff*, the Supreme Court has held that the district court need only inquire into whether there is "some evidence" upon which the disciplinary team could base its decision. *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). The Court further explained:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . ." *United States ex rel. Najtauer v. Commissioner of Immigration*, 273 U.S. [103], 106, 47 S.Ct. [302], 304. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.
>
> . . . .
>
> The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing.

*Id.*, 472 U.S. at 455-57, 105 S.Ct. at 2774-75 (citations omitted). Reliance upon the observations of a correctional officer can alone be sufficient to meet the *Hill* evidentiary standard. *Id.* at 456-57, 105 S.Ct. at 2774-75.

In the instant case, the evidence in the record, including the allegations of the amended complaint, the exhibits attached to the amended complaint, and the exhibits attached to the original complaint,[1] establishes the following. On March 26, 2009, Ms. Yant wrote the following disciplinary report, DR Log #102-90778:

> Inmate Monteleone is being charged with 6-1, (Disobeying a Verbal Order) Rule Prohibited Conduct 33-601.314. On 3-16-09, I, Ms. C. Yant, librarian was on duty in the ACI East Unit library. At approximately 10:01AM while in the law library I noticed the bathroom door completely closed. Upon knocking on the door I discovered there was someone inside of the bathroom. A few seconds later Inmate

---

[1] Even though plaintiff has filed an amended complaint, the court may still consider documents he filed with his original complaint. *See Gross v. White*, 2009 WL 2074234, at *4-5 (11th Cir. July 17, 2009) (unpublished opinion).

Monteleone came out of the bathroom. At that time I asked Inmate Monteleone why he was in the bathroom with the door completely shut. Inmate Monteleone stated he needed privacy. There is a sign posed [sic] directly on the bathroom door and on the wall in the law library which clearly states, "Do not close restroom door, must leave door ajar while using restroom. D.R. action will be taken."

(Doc. 1, Ex. A). Plaintiff admits he was provided written notice of the charge on April 1, 2009. (Doc. 8, p. 8 ¶¶ 13-15). Sergeant Sims investigated the incident. Plaintiff identified one witness: Inmate Stephen Branley. (*Id.*, p. 9 ¶ 19). Officer Sims obtained a statement from Inmate Branley, in which Branley stated: "I do not recall." (Doc. 8, pp. 9-10 ¶¶ 20-24, 29 and Ex. B). A disciplinary hearing was held on April 3, 2009. (Doc. 1, Ex. A, p. 5 in CM/ECF). Petitioner was present, was offered staff assistance and declined, and pleaded not guilty. (*Id.*). Plaintiff explained why he should be found not guilty. (Doc. 8, p. 10 ¶ 28). His statement was read, as well as Inmate Branley's. (Doc. 8, p. 10 ¶ 29; Doc. 1, Ex. A, p. 5). The disciplinary hearing team issued the following written decision:

The team finds the inmate guilty based on the information confirmed in the investigation and the officer's statement in Section 1 whereas, she stated, "I, Ms. C. Yant, librarian was on duty in the ACI East Unit library. At approximately 10:01AM while in the law library I noticed the bathroom door completely closed. Upon knocking on the door I discovered there was someone inside of the bathroom. A few seconds later Inmate Monteleone came out of the bathroom. At that time I asked Inmate Monteleone why he was in the bathroom with the door completely shut. Inmate Monteleone stated he needed privacy. There is a sign posed directly on the bathroom door and on the wall in the law library which clearly states, 'Do not close restroom door, must leave door ajar while using restroom.['"] Witness statements were read and considered.

(Doc. 1, Ex. A, p. 5). As a penalty, plaintiff was denied canteen privileges for 30 days and assigned to the disciplinary squad for 30 days. (*Id.*). His administrative appeals were unsuccessful. (Doc. 8, Exs. C-E).

Plaintiff claims he was denied *Wolff*'s second requirement that he be given the opportunity to present evidence, because Officer Sims failed to properly obtain

Inmate Branley's statement. (Doc. 8, p. 14). In support of this claim plaintiff submits the affidavit of Inmate Branley, who asserts:

> On 4-1-09 C/O Sims seen me in Y dorm in reference to me being called as a witness by I/M Joseph Monteleone about a disciplinary report that was written on him. C/O Sims stated to me "Do you remember when Monteleone got locked up." I told him I didn't know Monteleone got locked up. He then told me to put on the witness statement "I don't recall." C/O Sims didn't read me the DR or tell me what incident this was involving. Upon being released from A/C confinement I talked to I/M Monteleone and upon talking to him I inquired as to what he was calling me as a witness to. When he told me the incident I immediately remembered.
>
> The witness statement that I could've given if I was properly made aware of the facts is there were numerous signs on the bathroom door and I/M Monteleone did not know about the rule they have in Education/Library being that the bathroom door must stay ajar while using it. Immediately after I/M Monteleone was confronted by LTA Yant about him closing the bathroom door she had one of the library clerks take all the signs down because she stated that they could be confusing.

(Doc. 8, Ex. B).

The fact that plaintiff was not allowed to present the foregoing testimony did not deprive him of due process. Due process does not demand that prison officials allow inmates to call witnesses "whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002); *see Bass v. Perrin*, 170 F.3d 1312, 1319 (11th Cir. 1999) (holding that prison officials' failure to allow prisoners to present evidence in conjunction with the suspension of their outdoor exercise did not violate the Due Process Clause because the facts underlying the decision were not in dispute); *Langton v. Merman*, 667 F.2d 231 (1st Cir. 1981) (holding that prison official did not deny inmate due process when he refused to call witnesses whose testimony would not have added anything). Branley's proffered testimony -- that there were several signs on the bathroom door and that after plaintiff was given the DR Ms. Yants had all signs removed except the

one requiring that the door be left ajar -- did not dispute the facts underlying the disciplinary team's decision -- that there was a sign posted directly on the bathroom door and on the library wall clearly stating that the bathroom door was to be left ajar, and that plaintiff closed it. Further, Branley could not testify as to what plaintiff knew or did not know. He could only testify to those facts of which he had direct personal knowledge. All things considered, plaintiff has failed to show that Inmate Branley's testimony was necessary.[2]

## CONCLUSION

Taking the allegations of the amended complaint as true and construing them in the light most favorable to the plaintiff, they fail to state a plausible due process claim under § 1983. Plaintiff has not shown that his assignment to the disciplinary squad for 30 days implicated due process protections under *Sandin*. Moreover, even if plaintiff had a protected liberty interest in remaining free of the rigors of the

---

[2]It is clearly established that due process requires prior notice, or "fair warning," of proscribed conduct before a sanction may be imposed. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Based on this principle, several courts have held that before a prisoner can be charged with violating prison regulations, the prisoner must have notice of those regulations. *See, e.g., Reeves v. Pettcox*, 19 F.3d 1061 (5th Cir. 1994) (a prisoner is entitled to fair warning, or a fair opportunity to know, that his conduct is prohibited before being punished for that conduct); *Williams v. Nix*, 1 F.3d 712, 716 (8th Cir. 1993) ("It is axiomatic that due process requires fair notice of prohibited conduct before a sanction can be imposed."); *Forbes v. Trigg*, 976 F.2d 308, 314 (7th Cir. 1992) ("Due process requires that inmates receive fair notice of a rule before they can be sanctioned for its violation."); *Frazier v. Coughlin*, 850 F.2d 129, 130 (2nd Cir. 1988) (if prisoner can prove that he lacked notice of the rules of which he was charged with violating, he may have a valid due process claim); *Robles v. Coughlin*, 725 F.2d 12, 16 (2nd Cir. 1983) (dicta) ("[C]onsideration should be accorded those cases which hold that the failure to provide notice of prison rules to inmates is a violation of due process."); *Radi v. McCormick*, 978 F.2d 715, at * 1 (9th Cir. 1992) (Table, Text in Westlaw) ("[B]efore a prisoner can be charged with violating prison rules, the prisoner must have notice of those rules."); *Landman v. Royster*, 333 F.Supp. 621, 654-656 (E.D. Va. 1971) (In the prison context it is constitutionally required by the due process clause that the rules specifying prohibited conduct be written with reasonable specificity so that the inmate has fair warning to conform; such fair warning requires that the rules must somehow be communicated to those so required to conform).

In the instant case, however, it is undisputed that there was a sign on the bathroom door and on the library wall proscribing closing the bathroom door. This provided plaintiff fair warning that his conduct was prohibited, regardless of whether he actually read it.

disciplinary squad, his disciplinary conviction did not violate the Due Process Clause.

Accordingly, it is respectfully RECOMMENDED:

That this cause be DISMISSED under 28 U.S.C. § 1915(e)(2)(B)(ii), and the clerk be directed to close the file.

At Pensacola, Florida this 31ST day of August, 2009.


/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).